H. T. Montgomery *et al. v.* R. A. Coldwell *et al.*

1. ADMINISTRATOR.   *Accidental loss of assets.   His duty.*   An administrator,
   or other trustee, who suffers a loss of trust assets accidentally by fire,
   should promptly in a reasonable time bring the facts to the knowledge
   of the beneficiaries, and perhaps should take immediate steps, if
   the facts be not admitted, to obtain an allowance for the loss from a
   court having jurisdiction of the subject-matter; but, at any rate, if
   he fail to communicate the facts to the beneficiaries and only sets up
   the defense to a bill filed against him for an account after the lapse
   of twelve years from the loss, the burden of proof is on him, and he
   must make out the defense with reasonable certainty.

2. CHANCERY PLEADING AND PRACTICE.   *Admissions of answer.*   An
   answer admitting specific items of charge, without any application
   to the court to modify its language, cannot be changed on mere con-
   jecture based on the evidence.

3. SAME.   *Exceptions to evidence.*   Exceptions to evidence must be shown
   by the record to have been brought to the attention of the chancellor
   and acted on by him, otherwise they will be considered as waived.

4. SAME.   *Administrator.   Admission of assets.   Evidence.*   Admission of
   assets in writing, not under oath, made by an administrator in a case

to which he is a party, is, of course, evidence against him, and is also *prima facie* evidence, as would also be the judgment recovered thereon, against the surety who is also a party.

### FROM BEDFORD.

Appeal from the Chancery Court at Shelbyville. W. M. BRADFORD, Ch., presiding by interchange.

H. L. & R. B. DAVIDSON for complainants.

COLDWELL & SHEPARD for defendants.

COOPER, J., delivered the opinion of the court.

As this case comes before us upon the exceptions to the Referees' report, the bill may be treated as filed for a settlement of the administration of R. A. Coldwell, as administrator with the will annexed of John Reed, deceased. An account was taken with the administrator and reported by the master. Both parties filed exceptions, which were acted on by the chancellor and a decree rendered in favor of the complainants, as the residuary legatees under Reed's will, against R. A. Coldwell, as administrator, etc., and Thos. H. Coldwell, his surety on the administration bond, for $1,055 25. The defendants appealed, and the Referees have reported in favor of allowing one or two of the defendants' exceptions, and otherwise affirming the decree. Both parties have filed exceptions to the report of the Referees.

John Reed died in July, 1860, having made a will

giving his property to his wife for life, and then to certain legatees in remainder in designated proportions. One J. Coats was named as executor of the will, and qualified accordingly. He made a sale of the personal effects, principally, it seems, on a credit of twelve months. He afterwards died, and in December, 1863, the defendant, R. A. Coldwell, was appointed administrator *de bonis non* with the will annexed, and qualified by giving bond in the penalty of $1,500, with the defendant, T. H. Coldwell, as one of his sureties. R. A. Coldwell, as administrator, etc., never made any return to the county court of the assets which came to his hands, nor did he ever make any settlement with the clerk of the county court. The widow of the testator died in August, 1874, and this bill was filed August 20, 1877. The account acted upon was not prepared until March, 1879.

The principal contest in the case is over an item of charge of $426.80, money collected by the administrator from Dixon & Dismukes, on June 21, 1865. The master had charged the administrator with the amount of the contested item, and the chancellor confirmed his action by overruling the exceptions taken by the defendants to that part of the report. The Referees have reported in favor of reversing the ruling of the chancellor in this regard, and sustaining the defendants' exceptions.

The administrator admits in his answer and deposition that the money was collected by him from the

parties named on the day specified. He insists that he ought not to be charged therewith because, he says, he had retained the money, and kept it at his house with the expectation of loaning it out on good personal security to a designated individual, when in August, 1865, his house was accidentally destroyed by fire, and the money consumed therewith, together with a larger sum of his own money.

Perhaps it is a sufficient answer to this defense to say that it was the duty of the administrator, upon the happening of the alleged accident, promptly within a reasonable time, to have made a statement of the facts to the parties interested in the fund, and unless they expressed themselves satisfied therewith, if *sui juris*, or if those parties were under disability to apply to the proper court for an allowance to the extent of the loss. It is a case for active diligence while the facts are fresh. A delay of years, until the memory of witnesses has become dim, and persons who may be supposed cognizant of the facts have died, especially in a case like this, where it does not appear that any party interested was notified of the facts, is a strong if not conclusive circumstance with equity to refuse to entertain the claim for relief. The defense, so far as appears, was only made known by the filing of the defendant's answer to the bill in this case. And neither in his answer nor his deposition does the defendant claim that he ever made known the facts to the parties interested before the filing of his answer in October, 1877.

But it is not necessary to put the decision on this ground, for we are all clear that to sustain such a defense after the lapse of years, the proof must establish the facts, if not beyond a reasonable doubt, at least clearly and satisfactorily, and with convincing certainty. The findings of the master in his report, and of the chancellor in his decree against the defense, show very clearly that the defense is not made out with certainty. And the Referees, while finding in favor of the defense, concede: "It does appear a little strange that he did not mention this loss" to the parties interested. They put their decision upon the ground that they cannot conclude that his statement is untrue because he did not see proper to disclose this loss. But the question does not necessarily turn upon the truth or untruth of the defendant's statements, in the sense that the facts stated may have been honestly believed by him at the time. He swears equally confidently, as will be seen presently, and no doubt equally honestly, to a statement of the only assets which came to his hands as administrator, and afterwards recollected and admitted other items of charge. The question is whether, under the circumstances, they make out a clear case as to these facts after a failure on his part to make known the supposed facts for twelve years to those interested, or to set up any such claim as is now insisted on. The fact that the money was burned, and that when burned it was kept apart from his own money, rests upon the testimony of the administrator alone. The only person to whom the loss of this money was commu-

nicated by him was his brother, but even to him he did not state that the money was kept apart from his own funds. His statement of the amount of money lost seems to have varied in each conversation from $2,700 to $3,782 in his answer, no two statements agreeing. One witness testifies that, in a conversation with the widow Reed, the administrator said that he had lost money in the burning of his house, but he did not say anything about it being the Reed money. Another witness, in 1873 or 1874, called upon the defendant, at the request of the widow Reed, about her estate in his hands coming from her brother, and staid all night. In the course of their conversations, Dr. Coldwell spoke of having brought $3,000 of his money from Nashville to pay for land, and that it was burned in his house. He said nothing about any other money, and the witness, who had an interest in the Reed estate as remainder-man, never heard that the Reed money had been burned until the filing of the answer in this case. Under these circumstances, we think the defense is not sufficiently made out.

The only other exception of the complainants to the report of the Referees is to the reduction by them of the charge of the Blakemore judgment, as fixed by the master and chancellor, from $182 to $145. On the other hand, the defendant, Thos. H. Coldwell, excepts to the allowance of the Blakemore judgment at all, because, he says, there is no evidence to establish it against him, and because, he insists, an item of charge of Smiley and Wood $145, taken from the administrator's answer, and the Blakemore item,

taken from a separate memorandum of charge, are one and the same. The same defendant, not very consistently, also excepts to the allowance of the item of $145 at all, because, he says, the testimony of Smiley and Wood is in conflict. The same points are made in the defendant's exception to the master's report.

In order to settle the merits of these various exceptions, it will be necessary to see exactly upon what the charges · are based. In his answer, the administrator says: "That there came into his hands as such administrator, the following accounts: "From Smiley & Wood, on February 24, 1864, $48; on February 17, 1864, $145; from Dixon & Dismukes, about June 31, 1865, $426.80; from M. L. Dismukes, November 24, 1870, $168.45. This is all the money I ever received, and no other personal property ever came into my hands."

In the progress of the cause, on February 25, 1878, R. A. Coldwell admits, by agreement in writing, as administrator of John Reed, he is chargeable with several other items, setting them out with dates and amounts, and among others with an item as follows: "Also February 24, 1864, judgment against J. A. Blakemore on Marshall's docket, which is lost, and which I have collected as administrator of John Reed. The judgment as remembered was for $182. This item is as recollected, but if it is for too much or too little, it is open for correction." No correction was ever made, and the admission stands as a proper charge.

The only reason given for considering this item

and the item of $145 in the answer as the same, is that the proof of Smiley and Wood does not sustain the charge, and that the draftsman of the answer probably omitted to insert that this item was collected from J. A. Blakemore. But if this were so, it was the duty of the defendant to have the answer corrected accordingly by a proper application to the court. As long as it remains in its present shape, containing a plain and consistent admission, we cannot change it upon a mere conjecture. The Referees thought the conjecture might be true, but the truth was not sufficiently evident to induce them to interfere with the item of $145, but enough so to cut down the judgment from $182 to $145. But this is clearly inadmissible. If the two items are the same, there should be only one charge. If they are different, they should be charged exactly as the defendant admitted them to be. A very conclusive answer to the conjecture of counsel is that if there had been any thing in it, the administrator would have taken care to have shown the fact in his subsequent written agreement, instead of most clearly introducing a new item of charge. Moreover, when the administrator's deposition was taken at a late stage of the cause, he is asked whether he wishes to make any change in his answer which he has just read. His reply is that he does not wish to change his answer, but to make some additions to it.

Nor is there anything in the contention of defendant's counsel that the item of $145 is rendered at all doubtful by anything in the testimony of Smiley and Wood. The first of these witnesses testifies that

he bought a horse at the executor's sale in 1860 at the price of $60, and gave his note, with Wood as surety, at one year therefor. He paid this note, he says, in February, 1864, to R. A. Coldwell, as administrator, the amount being then $70. He paid this note without having been sued thereon. He also proves, as does Wood himself, that Wood bought a horse at the same sale for $70, and gave his note therefor at one year, with Smiley as surety. Wood says he paid this note, but cannot recollect when nor to whom. There is no conflict in the testimony of these witnesses, and Wood's defective recollection is fairly supplemented by the admission of the administrator that he collected from Smiley and Wood on February 17, 1864, $145, which was probably a little under the amount then due and paid. The other item of $48, collected from the same parties on February 24, 1864, is shown to have been a balance on a judgment against Smiley, and, so far as appears, an independent item.

During the progress of the cause, some exceptions were taken to evidence by both parties. Thos. H. Coldwell seems to have objected that the written agreement of the administrator of February 25, 1878, as to certain items of charge, was not evidence against him, because not sworn to. The record does not show that any of these exceptions were specially brought to the attention of the chancellor on the hearing, and directly acted upon by him. We have recently held in several cases that objections to evidence in chancery cases must be shown by the record to have been

---

---

made at the hearing, if not shown by the record to have been sooner disposed of, and ruled upon at the time, otherwise they will be considered as waived. Moreover the admission of assets by an administrator, in a suit to which he is a party, is of course competent evidence against him, and is always *prima facie* evidence against the surety sued in the· same suit: *Young* v. *Hare*, 11 Hum., 303. And a judgment against the principal, although recovered at the same term, would be equally *prima facie* evidence against the surety.

The exceptions of the complainants to the report of the Referees will be sustained, and those· of the defendant disallowed. The result is to affirm the decree of the chancellor with costs.